UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES F. ROTH,<br><br>            Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No.  2:13-cv-1691-KJN<br><br><br>ORDER |

Plaintiff James F. Roth seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from February 1, 2009, through the date of the final administrative decision.  (ECF No. 17.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 19.)

////

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 8, 9.)

1

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I. BACKGROUND

Plaintiff was born on September 27, 1963; completed two years of college, obtaining an associate degree in criminal justice; and previously worked as a forklift operator, cook, stock person, and janitor.[2] (Administrative Transcript ("AT") 28-33, 144.) Plaintiff applied for DIB and SSI on September 9, 2010, and September 14, 2010, respectively, alleging that he was unable to work as of February 1, 2009, due to reflex sympathetic dystrophy syndrome. (AT 63-64, 143.) On March 1, 2011, the Commissioner determined that plaintiff was not disabled. (AT 70-71.) Upon plaintiff's request for reconsideration, that determination was affirmed on May 11, 2011. (AT 78.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on April 2, 2012, and at which plaintiff, represented by a non-attorney representative, and a vocational expert ("VE") testified. (AT 23-61.)

In a decision dated April 26, 2012, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from February 1, 2009, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 8-18.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 19, 2013. (AT 1-3.) Thereafter, plaintiff filed this action in federal district court on August 15, 2013, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ improperly discounted plaintiff's testimony regarding his symptoms and functional limitations; and (2) whether the ALJ improperly relied on the VE's testimony regarding the number of jobs available that plaintiff could perform.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

    A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3]  As an initial matter, the ALJ found that plaintiff met

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920, 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his or her past relevant work?  If

3

1   the insured status requirements of the Act for purposes of DIB through December 31, 2013. (AT
2   13.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful
3   activity since February 1, 2009, plaintiff's alleged disability onset date. (Id.) At step two, the
4   ALJ determined that plaintiff had the following severe impairments: complex regional pain
5   syndrome/reflex sympathetic dystrophy syndrome (CRPS/RSDS) of the bilateral lower
6   extremities, and arthritis of the right foot and ankle. (Id.) However, at step three, the ALJ
7   determined that plaintiff did not have an impairment or combination of impairments that met or
8   medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,
9   Appendix 1. (AT 14.)

10   Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity
11   ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch and/or crawl, cannot climb ladders, ropes and/or scaffolds and cannot operate foot controls with the bilateral feet.

16   (AT 14.)

17   At step four, the ALJ found, based on the VE's testimony, that plaintiff was unable to
18   perform any past relevant work. (AT 16-17.) Finally, at step five, the ALJ determined, in
19   reliance on the VE's testimony, that, considering plaintiff's age, education, work experience, and
20   RFC, there were jobs that existed in significant numbers in the national economy that plaintiff
21   could perform. (AT 17.) Specifically, the VE testified that plaintiff would be able to perform the

---

so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

following representative occupations: (1) handpacker/packing line worker, with 3,050 positions in California and 21,700 positions nationally; (2) electronics assembler, with 570 positions in California and 3,800 positions nationally; and (3) package machine operator, with 600 positions in California and 4,800 positions nationally. (AT 17-18, 59-60.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from February 1, 2009, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 18.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. Whether the ALJ improperly discounted plaintiff's testimony

Plaintiff contends that the ALJ erred by discounting plaintiff's testimony regarding his symptoms and functional limitations without providing legally sufficient reasons.

In Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

"At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

5

1  693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.
2  1999)). In weighing a claimant's credibility, an ALJ may consider, among other things,
3  "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or
4  between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and
5  testimony from physicians and third parties concerning the nature, severity, and effect of the
6  symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.
7  2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.
8  1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the
9  court "may not engage in second-guessing." Id. at 959.

10  As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's
11  subjective allegations. Indeed, in light of plaintiff's complaints of pain and swelling in the lower
12  extremities, the ALJ assessed a more restrictive RFC than both the consultative examiner and
13  state agency physicians, limiting plaintiff to sedentary work. (AT 14, 206-07, 211-14, 225.)
14  Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms
15  and functional limitations, the ALJ provided several specific, clear, and convincing reasons for
16  doing so.

17  The ALJ found that the weight of the medical evidence did not support plaintiff's claims
18  of limitation to the disabling degree alleged. (AT 15-16.) For example, the ALJ noted that
19  plaintiff's treating physician and podiatrist, Dr. John Williams, observed that plaintiff had normal
20  muscle tone and strength; no pain or crepitation in the ankle with palpation or range of motion;
21  and no skin breakdown upon debridement. (AT 16, 237.) The ALJ also discussed the
22  consultative examiner's findings that there was no evidence of effusion or deformities in
23  plaintiff's lower extremities; plaintiff's deep tendon reflexes were intact; and plaintiff's
24  ambulation without the cane was non-antalgic. (AT 16, 204-06.) To be sure, "after a claimant
25  produces objective medical evidence of an underlying impairment, an ALJ may not reject a
26  claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate
27  the alleged severity of pain." Burch, 400 F.3d at 680 (citing Bunnell v. Sullivan, 947 F.2d 341,
28  345 (9th Cir. 1991)). However, while lack of medical evidence cannot form the sole basis for

1  discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the
2  ALJ to consider.  Id. at 681.

3  The ALJ also reasonably found that plaintiff's allegations of disabling limitations were
4  undermined by the relatively routine and/or conservative treatment he received for his
5  impairments.  See Tommasetti, 533 F.3d at 1039-40 (reasoning that a favorable response to
6  conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d
7  742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment
8  is sufficient to discount a claimant's testimony regarding severity of an impairment."); Fair v.
9  Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  The ALJ observed that the only treatment plaintiff
10 received was a custom orthotic insole, orthotic footwear, and a non-steroid anti-inflammatory
11 drug.  (AT 15-16, 37-38, 234.)  The ALJ further noted that, despite plaintiff's allegations of
12 disabling symptoms, neither of his treating physicians imposed any restriction on his activities.
13 Indeed, plaintiff's primary treating physician, Dr. Vladimir Medina, stated that plaintiff was
14 "doing well."  (AT 16, 265.)  Notably, in the same report, Dr. Medina also recommended that
15 plaintiff exercise regularly.  (AT 266.)

16 Additionally, the ALJ concluded that plaintiff's activities were not limited to the extent
17 that one would expect given the complaints of disabling symptoms and limitations.  "While a
18 claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may
19 discredit a claimant's testimony when the claimant reports participation in everyday activities
20 indicating capacities that are transferable to a work setting.  Even where those activities suggest
21 some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the
22 extent that they contradict claims of a totally debilitating impairment."  Molina, 674 F.3d at 1112-
23 13 (citations and quotation marks omitted); see also Burch, 400 F.3d at 680 (ALJ properly
24 considered claimant's ability to care for her own needs, cook, clean, shop, interact with her
25 nephew and boyfriend, and manage her finances and those of her nephew in the credibility
26 analysis); Morgan, 169 F.3d at 600 (ALJ's determination regarding claimant's ability to "fix
27 meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific
28 finding sufficient to discredit the claimant's credibility).

Here, the ALJ pointed to plaintiff's own testimony and statements that he could sleep without difficulty, wash dishes, shop for groceries, and perform household chores and yard work, such as mowing the lawn with a push mower, maintaining hedges, vacuuming, and mopping. (AT 16, 44-47, 158, 204.)  The ALJ rationally concluded that this evidence suggested that plaintiff was not as functionally limited as he alleged.  Moreover, even crediting plaintiff's testimony that he often had to sit down and take breaks from the above activities, the ALJ's limitation to sedentary work, which involves only limited standing and walking, adequately accounts for such concerns.

Finally, the ALJ noted an inconsistency between plaintiff's testimony and prior statements.  The ALJ observed that, while plaintiff testified that he suffered various side effects from the use of his medication, a note by his treating podiatrist, Dr. Williams, stated that the medication was "well tolerated" with "no [gastrointestinal] problems."  (AT 16, 237.)

Thus, the court concludes that the ALJ provided several specific, clear, and convincing reasons for discounting plaintiff's credibility.  The record may well contain some contrary evidence that plaintiff could point to in an attempt to bolster his credibility.  However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence.  As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible.  But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair, 885 F.2d at 604.

    2.  <u>Whether the ALJ improperly relied on the VE's testimony</u>

Plaintiff also contends that the ALJ erred by relying on the VE's testimony to find that there were a significant number of jobs in occupations that plaintiff could perform.

As an initial matter, plaintiff failed to raise this evidentiary issue before either the ALJ or the Appeals Council.  The Ninth Circuit has held that, unless manifest injustice would result,

claimants must generally "raise all issues and evidence at their administrative hearings in order to preserve them on appeal," at least when claimants are represented by counsel. Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999). This requirement is because the ALJ as the fact-finder, rather than a federal court reviewing under a substantial evidence standard of review, is the appropriate person to resolve factual and evidentiary inconsistencies, including conflicts concerning statistical evidence. Indeed, at the administrative hearing, the vocational expert is subject to cross-examination by plaintiff's representative, and is on hand to address any inconsistencies between the expert's own statistics and those proffered by the plaintiff. To generally permit claimants to later second-guess a vocational expert's testimony and statistics in their federal court appeals, when the claimants failed to challenge such testimony in the administrative proceedings below, would inject a significant amount of inefficiency into an already-delayed claim resolution process, and also impermissibly alter the scope of judicial review of Social Security claims.

In this case, plaintiff, who was represented by non-attorney representative Steven Skinner,[4] did not object to the VE's qualifications, question the VE as to his methodology in determining the number of jobs available that plaintiff could perform, or otherwise challenge the VE's testimony at the hearing before the ALJ. (See AT 56-61.) Nor did plaintiff submit to the Appeals Council any evidence challenging the VE's testimony. (See AT 1-6.) As such, the court concludes that any issue concerning the VE's statistical testimony is waived. For the reasons discussed below, plaintiff has also not made an adequate showing of manifest injustice to overcome the waiver.

---

[4] The Ninth Circuit in Meanel did not specifically address the issue of whether representation by counsel includes or excludes administrative representation by a non-attorney representative. However, the court observes that non-attorneys are permitted to, and frequently do, represent claimants in administrative proceedings before the Commissioner, and many such representatives undoubtedly have significantly more expertise in the nuances of Social Security law than the average attorney practitioner. More specifically in this case, plaintiff was represented by Steven Skinner, who is an Accredited Disability Representative through the National Association of Disability Representatives and frequently represents claimants who reside in Northern California and Southern Oregon. See http://www.skinner-disability.com/skinner-and-associates/. Therefore, the court is satisfied that plaintiff was represented within the meaning of Meanel.

Even assuming *arguendo* that no waiver occurred, the court finds that the ALJ properly relied on the VE's testimony. Contrary to plaintiff's argument, the VE was not required to explain his methodology for calculating the number of jobs available that plaintiff could perform, and the ALJ was not obligated to inquire. As the Ninth Circuit explained:

> An ALJ may take administrative notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.

Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Importantly, the requirements established in Federal Rule of Evidence 702, Daubert, and Kumho Tire do not govern the admissibility of evidence in Social Security administrative proceedings. Id. at 1218 n.4. Therefore, unless the record on its face indicates that the VE's testimony was fundamentally flawed, see Farias v. Colvin, 519 Fed. App'x 439 (9th Cir. May 20, 2013), the testimony constitutes substantial evidence upon which the ALJ was entitled to rely.

Here, the record does not indicate that the VE's testimony was fundamentally flawed. On their face, the job number statistics testified to by the VE do not appear so extremely high or unusual that a reasonable mind could not accept them. For that reason, plaintiff's reliance on the Ninth Circuit's unpublished decision in Farias is misplaced. In Farias, the vocational expert testified that the plaintiff was capable of working as a "head dance hall hostess," but stated that there were 3,600 such jobs available locally and 342,000 nationally. Farias, 519 Fed. App'x at 440. The court held that a reasonable mind could not accept that there were that many positions for "head dance hall hostess," and stated that the vocational expert likely provided the job numbers for "restaurant hostess" by mistake. Id. The court observed that the Bureau of Labor Statistics reported job statistics for "restaurant hostess" that were quite similar to the number provided by the VE for "head dance hall hostess." Id. In sum, Farias was an unusual case in which the vocational expert provided employment statistics for the wrong position by mistake – an error that was readily apparent on the face of the record. As such, Farias is inapposite here.

The employment statistics from the Bureau of Labor Statistics submitted by plaintiff to this court do not demonstrate that the VE's testimony was fundamentally flawed. To the

1 contrary, as the Commissioner persuasively points out, plaintiff's selectively chosen charts and raw data are unaccompanied by any analysis or explanation from a vocational expert or other expert source to put them into context.[5] Moreover, even if it were deemed competent, reliable evidence, it at best conflicts with the VE's testimony, and the court must still uphold the ALJ's finding as long as it was based on substantial evidence. For the reasons discussed above, the VE's testimony here constitutes substantial evidence on which the ALJ was entitled to rely.

V. CONCLUSION

In light of the above, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED.
3. Judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: October 17, 2014

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[5] The mere fact that the Ninth Circuit briefly referenced job numbers published by the Bureau of Labor Statistics in its unpublished Farias decision to explain the likely mistake made by the vocational expert in that case does not transform such raw statistics, unsupported by vocational expert testimony, into judicially-noticed conclusive evidence for purposes of making a substantive decision in a Social Security case.

11